# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Water, Inc., a California Corporation<br><br>Plaintiff,<br><br>v.<br><br>Everpure, Inc.; Everpure, LLC; Pentair Residential Filtration, LLC; Pentair, Inc.; Purcell Murray Company, Inc.; Gerard McKeown; Mike Madsen; Debra Barton; and Does 1 to 10, Inclusive<br><br>Defendants.<br><br>Everpure, LLC; Pentair Residential Filtration, LLC.<br><br>Counterclaimants,<br><br>vs.<br><br>Water, Inc., a California Corporation<br><br>CounterDefendant. | Case No:  CV09-03389 ABC (SSx)<br><br>**PROTECTIVE ORDER**<br><br>Judge:    Audrey B. Collins |

PROTECTIVE ORDER
CASE NO. CV09-03389 ABC (SSX)

LACA_2456657.1

WHEREAS, the parties to this action, Everpure, Inc., Everpure, LLC, Pentair Residential Filtration, LLC, Pentair, Inc., Gerard McKeown, Mike Madsen, and Debra Barton (collectively the "Pentair Entities"); Water, Inc.; and Purcell Murray Company, Inc. ("Purcell Murray") are engaged in the above-captioned litigation requiring them to identify and disclose certain documents and other tangible items;

WHEREAS, each party believes they possess confidential information within the contemplation of Rule 26(c) of the Federal Rules of Civil Procedure;

WHEREAS, each party has stipulated and agreed to the provisions herein, and believes there is good cause for the entry of an order affording these protections, and each party moves the Court for entry of this Stipulated Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure:

1. **GOOD CAUSE STATEMENT**

1.1.    This case involves claims and allegations made by entities that directly compete with one another in selling and servicing residential water filtration systems. The Pentair Entities are in the business of, among other things, the manufacture and sale of water filtration devices under the trade name Everpure. Purcell Murray is a Master Distributor of Pentair Residential Filtration. It purchases water filtration products from Pentair Residential Filtration and resells them to dealers located in California and certain other western states. Water, Inc. is a former Master Distributor of the Pentair Entities. While a Master Distributor Water, Inc. produced and sold its own proprietary "Ever Brands" water dispensing units Ever Cold (water chillers), Ever Hot (water heaters) and Ever Brew (coffee brewers) that it sold together with Everpure brand water filtration systems and cartridges. Water, Inc. now also produces and sells Body Glove brand water filtration systems. Water, Inc. and Purcell Murray directly compete in the sale of residential water filtration systems. Water, Inc. has served discovery requests on the Pentair Entities and Purcell Murray, and the Pentair Entities have served

LACA_2456657.1

discovery requests on Water, Inc. that seek certain proprietary and confidential information relating to their respective claims.

1.2.    Specifically, Water, Inc. has requested the following information and documents from the Pentair Entities and Purcell Murray:

(a)    Customer Lists

i.    trade secret information comprised of the Pentair Entities' and Purcell Murray's customer lists, including identification of Everpure customers developed by Purcell Murray, the Pentair Entities' current and former Master Distributors, the Pentair Entities' and Purcell Murray's distributors, dealers and Internet direct distributors and dealers;

ii.    documents containing such customer list information, including customer lists, the Pentair Entities' Everpure Master Distributor agreements, and communications disclosing such customer information, including communications between the Pentair Entities, Purcell Murray, the Pentair Entities' other former and current Master Distributors and/or Purcell Murray's dealers;

iii.    sensitive and personal information of the Pentair Entities' and Purcell Murray's distributors, dealers and customers, including the customers' home telephone numbers, addresses, and/or other personal data identifiers;

(b)    Pricing, Sales and Promotional Information

i.    confidential commercial information concerning the Pentair Entities' and Purcell Murray's pricing and sales of Everpure products, including price, volume and volume rebate programs, terms of payment, sales programs and policies, and service programs and policies;

ii.    confidential commercial information concerning the Pentair Entities' and Purcell Murray's promotional policies and procedures for Everpure products, including display programs, internet programs and policies, spiff programs, advertising programs, and minimum advertised price programs and policies;

iii.    documents containing such pricing, sales or promotional information, including internal price lists, policy statements, program guidelines, procedure manuals, Everpure Master Distributor agreements, communications concerning such pricing, sales, and promotional information, including communications between the Pentair Entities, Purcell Murray, the Pentair Entities' other former and current Master Distributors and/or Purcell Murray's dealers, and Everpure Authorized Dealer Showroom correspondence;

LACA_2456657.1

(c)     Marketing Plans and Strategy

        i.      confidential research, development and commercial information concerning Purcell Murray's marketing strategy, marketing plans and marketing tactics;

        ii.     confidential research, development and commercial information concerning the Pentair Entities' evaluation of Water, Inc.'s Body Glove line of products;

        iii.    documents containing such marketing plans and strategy, including market reports, market studies, and communications concerning such marketing plans and strategies, including communications between the Pentair Entities, Purcell Murray, the Pentair Entities' other former and current Master Distributors and/or Purcell Murray's dealers;

(d)     Financial Information

        i.      confidential financial information with respect to Purcell Murray's annual purchases and revenues for Everpure products; and

        ii.     documents containing such confidential financial information, including sales reports, invoices, and shipping records.

1.3.    Specifically, the Pentair Entities have requested the following information and documents from Water, Inc.:

(a)     agreements relating to the "Body Glove" line of products;

(b)     documents relating to the development of the "Body Glove" line of products;

(c)     sales, pricing and promotional information and records relating to Water, Inc.'s sale of "Body Glove" and Everpure products;

(d)     communications between Water, Inc. and its "Body Glove" product manufacturer;

(e)     documents containing customer list information, including customer lists, related to Water, Inc.'s sale of Body Glove branded products, including:

LACA_2456657.1

    i. trade secret information comprised of the Water's customer lists, including identification of Water's customers developed by Water, and the Ever Brands and Body Glove brand dealers and Internet direct sales and dealers;

    ii. documents containing such customer list information, including customer lists, and communications disclosing such customer information; and

    iii. sensitive and personal information of the "Ever Brands" and Body Glove brand dealers and customers, including the customers' home telephone numbers, addresses, and/or other personal data identifiers.

   (f) financial Information

    i. confidential financial information with respect to Water, Inc.'s monthly purchases and revenues for Everpure and Body Glove branded products;

    ii. documents containing such confidential financial information, including sales reports, invoices, and shipping records; and

    iii. financial information related to the amount of sales of Body Glove branded products.

   (g) financial documents relating to Water, Inc.'s alleged damages

   (h) product and warranty information related to Body Glove branded water filtration products.

  1.4. The information and documents identified and described in Section 1.2 above is confidential and proprietary to the Pentair Entities and Purcell Murray. The information and documents identified and described in Section 1.3 above is confidential and proprietary to Water, Inc.  For the reasons set forth below, good cause exists to protect the information and documents from being disclosed to the public based on the Pentair Entities', Purcell Murray and Water, Inc.'s need for confidentiality:

   (a) Customer Lists:  State and federal law recognize the sensitivity of and the need to protect against public disclosure of this type of sensitive

5

1  business information.  Confidential customer information and competitive financial
2  information of the type requested can constitute a protectable trade secret.  *See*
3  *Hollingsworth Solderless Terminal Co. v Turley*, 622 F.2d 1324, 1335 (9th Cir.
4  1980); *Rigging Int'l Maint. Co v Gwin*, 128 Cal. App. 3d 594 (1982).  California's
5  version of the Uniform Trade Secrets Act defines "trade secret" as "information,
6  including a . . . compilation . . . that: [¶] (1) Derives independent economic value,
7  actual or potential, from not being generally known to the public or to other
8  persons who can obtain economic value from its disclosure or use; and [¶] (2) Is
9  the subject of efforts that  are reasonable under the circumstances to maintain its
10  secrecy." (Civ.Code, § 3426.1, subd. (d).) fn. 3.  Whether information is a trade
11  secret is ordinarily a question of fact.  *See In re Providian Credit Card Cases*, 96
12  Cal.App.4th 292, 300 (2002); *Thompson v. Impaxx, Inc.*, 113 Cal.App.4th 1425,
13  1430 (2003); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997).  The
14  Pentair Entities, Purcell Murray and Water, Inc. undertake reasonable efforts to
15  maintain the secrecy of such customer lists and derive a substantial economic value
16  from the customer lists not being generally known to the public, especially its
17  competitors.  Disclosure of the customer lists could result in infringement of the
18  Pentair Entities', Purcell Murray's and Water, Inc.'s trade secrets.  Further, such
19  disclosure could also be used by competitors to unfairly compete with the parties.
20  Moreover, disclosure of the personal data identifiers of customers could result in
21  annoyance, embarrassment or identity theft.
22         (b)     Pricing, Sales and Promotional Information:  Purcell Murray
23  and Water, Inc. are distributors that sell products to dealers who, in turn, sell
24  products to retail customers.  The price, terms and volumes by which they sell to
25  their dealers are not generally known by other entities, and each regards the
26  information as confidential and proprietary, in that if it was obtained by a
27  competitor, it would likely provide a competitive advantage.  The Pentair Entities
28  likewise consider their pricing policies, terms of sale, distribution agreements, and

LACA_2456657.1

1  negotiations with potential distributors as competitively sensitive information that,

2  if disclosed to competitors, could result in those competitors obtaining an unfair

3  advantage in the marketplace.  For example, competitors could use current price

4  lists and sales and pricing policies to unfairly compete with the parties.

5         (c)    Marketing Plans and Strategy:  The Pentair Entities, Purcell

6  Murray, and Water, Inc.'s confidential research and develop reports, studies and

7  strategies at significant costs to compete in the market.  This information is not

8  generally known by other entities, and each regards the information as confidential

9  and proprietary, in that if it was obtained by a competitor, it would likely provide a

10  competitive advantage.  For example, competitors could use such plans and

11  strategies without expending the costs to create the information or undermine these

12  strategies to unfairly compete with the parties.

13         (d)    Financial Information:  Purcell Murray's and Water, Inc.'s

14  financial information, including its annual sales and revenue, like its pricing, are

15  not generally known by other entities, and Purcell Murray and Water, Inc. regard

16  the information as confidential and proprietary, in that if it was obtained by a

17  competitor, it would likely provide a competitive advantage.

18      1.5.    This Order is being sought to facilitate the pre-trial exchange of

19  confidential and proprietary information without requiring the parties to waive

20  their positions with respect to whether the documents/testimony exchanged should

21  be protected from public disclosure, and without requiring the court to receive and

22  rule upon what is likely to be thousands of pages of documents to be exchanged.

23      1.6.    The parties acknowledge that this Order does not confer blanket

24  protections on all disclosures or responses to discovery and that the protection it

25  affords extends only to the limited information or items that are entitled under the

26  applicable legal principles to treatment as confidential.  The parties further

27  acknowledge, as set forth in Section 10, below, that this Stipulated Protective

28  Order creates no entitlement to have confidential information maintained under

LACA_2456657.1

1  seal by the court; Civil Local Rule 79-5 sets forth the procedures that must be

2  followed and reflects the standards that will be applied when a party seeks to file

3  material obtained through discovery under seal.

4  **2.    DEFINITIONS**

5      2.1.    Party;  any party to this action, including all of its officers, directors,

6  employees, consultants, retained experts and outside counsel (and their support

7  staff).

8      2.2.    Disclosure or Discovery Material;  all items or information, regardless

9  of the medium or manner generated, stored, or maintained (including among other

10  things, testimony, transcripts, or tangible things) that are produced or generated in

11  disclosures or responses to discovery in this matter.

12      2.3.    "Confidential" Information or Items;  information (regardless of how

13  generated, stored or maintained) or tangible things that qualify for protection under

14  standards developed under F.R.Civ.P. 26(c), as identified and described in Sections

15  1.2 and 1.3, above.

16      2.4.    "Highly Confidential – Attorneys' Eyes Only" Information or Items;

17  extremely sensitive "Confidential Information or Items" whose disclosure to

18  another Party or non-party would create a substantial risk of serious injury that

19  could not be avoided by less restrictive means.

20      2.5.    Receiving Party;  a Party that receives Disclosure or Discovery

21  Material from a Producing Party.

22      2.6.    Producing Party;  a Party or non-party that produces Disclosure or

23  Discovery Material in this action.

24      2.7.    Designating Party;  a Party or non-party that designates information or

25  items that it produces or in responses to discovery as "Confidential or "Highly

26  Confidential Attorneys' Eyes Only."

27      2.8.    Protected Material;  any Disclosure or Discovery Material that is

28  designated as "Confidential" or as "Highly Confidential -- Attorneys' Eyes Only."

LACA_2456657.1

2.9.    Outside Counsel;  attorneys who are not employees of a Party but who are retained to represent or advise a Party in this action.

2.10.  House Counsel;  attorneys who are employees of a Party.

2.11.  Counsel;  (without qualifier):  Outside Counsel and House Counsel (as well as their support staffs).

2.12.  Expert;  a person with specialized knowledge or experience in a matter pertinent in the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a past or a current employee of a Party or of a competitor of a Party's and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party.  This definition includes a professional jury or trial consultant retained in connection with this litigation.

2.13.  Professional Vendors;  persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors.

**3.    SCOPE**

The protections conferred by this Order cover not only Protected Materials (as defined above), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

**4.    DURATION**

Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

///

///

9

LACA_2456657.1

**5.    DESIGNATING PROTECTED MATERIAL**

5.1.    <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or non-party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. A Designating Party must take care to designate for protection only those parts of material, documents, items, or oral or written communications that quality – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

If it comes to a Party's or a non-party's attention that information or items that it designated for protection do not qualify for protection at all, or do not qualify for the level of protection initially asserted, that Party or non-party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2.    <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a), below), or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)    <u>for information in documentary form</u> (apart from transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" on each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY").

A Party or non-party that makes original documents or materials

LACA_2456657.1

available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copies and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party, must determine which documents, or portions, thereof, qualify for protection under this Order, then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY") on each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY").

           (b)    for testimony given in deposition or in other pretrial or trial proceedings. That the Party or non-party offering or sponsoring the testimony identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony, and further specify any portions of the testimony that quality as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." When it is impractical to identify separately each portion of testimony that is entitled to protection, and when it appears that substantial portions of the testimony may quality for protection, the Party or non-party that sponsors, offers, or gives the testimony may invoke on the record (before the deposition or proceeding is concluded) a right to have up to 30 days from receipt of the transcript to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"). Only those

LACA_2456657.1

portions of the testimony that are appropriately designated for protection within 30 days shall be covered by the provisions of this Stipulated Protective Order.

(c)    for information produced in some form other than documentary, and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." If only portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portions, specifying whether they qualify as "Confidential" or as "Highly Confidential – Attorneys' Eyes Only."

5.3.   Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to designate qualified information or items as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If material is appropriately designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" after the material was initially produced, the Receiving Party, on timely notification of the designation, must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1.   Timing of Challenges.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable substantial unfairness, unnecessary economic burdens, or a later significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2.   Meet and Confer.  A Party that elects to initiate a challenge to a Designating Party's confidentiality designation must do so in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of

12

LACA_2456657.1

communication are not sufficient) with counsel for the Designating Party. In conferring, the challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first.

6.3.   Judicial Intervention. A Party that elects to press a challenge to a confidentiality designation after considering the justification offered by the Designated Party may file and serve a motion under Civil Local Rule 37 that identifies the challenged material and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements imposed in the preceding paragraph and that sets forth with specificity the justification for the confidentiality designation that was given by the Designating Party in the meet and confer dialogue.

The burden of persuasion in any such challenge proceeding shall on the Designating Party. Until the court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation.

7.   **ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1.   Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 11, below (FINAL DISPOSITION).

LACA_2456657.1

1  Protected Material must be stored and maintained by a Receiving
2  Party at a location and in a secure manner that ensures that access is limited to the
3  persons authorized under this order.

4       7.2.   Disclosure of "CONFIDENTIAL" Information or Items.  Unless
5  otherwise ordered by the court or permitted in writing by the Designating Party, a
6  Receiving Party may disclose any information or item designated
7  CONFIDENTIAL only to:

8       (a)   the Receiving Party's Outside Counsel of record in this action,
9  as well as employees of said Counsel to whom it is reasonably necessary to
10  disclose the information for this litigation and who have signed the "Agreement to
11  Be Bound by Protective Order" that is attached hereto as Exhibit A;

12       (b)   the officers, directors, and employees (including House
13  Counsel) of the Receiving Party to whom disclosure is reasonably necessary for
14  this litigation and who have signed the "Agreement to Be Bound by Protective
15  Order" (Exhibit A)'"

16       (c)   experts (as defined in this Order) of the Receiving Party to
17  whom disclosure is reasonably necessary for this litigation and who have signed
18  the "Agreement to Be Bound by Protective Order" (Exhibit A);

19       (d)   the Court and its personnel;

20       (e)   court reporters, their staffs, and professional vendors to whom
21  disclosure is reasonably necessary for this litigation and who have signed the
22  "Agreement to Be Bound by Protective Order" (Exhibit A);

23       (f)   during their depositions, witnesses in the action to whom
24  disclosure is reasonably necessary and who have signed the "Agreement to Be
25  Bound by Protective Order" (Exhibit A).

26       (g)   the author of the document or the original source of the
27  information.

28  ///

14

LACA_2456657.1

7.3.    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:"

(a)    the Receiving Party's Outside Counsel of record in this action, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Agreement to Be Bound by Protective Order" that is attached as Exhibit A;

(b)    experts (as defined in this Order) (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Agreement to Be Bound by Protective Order" (Exhibit A);

(c)    the Court and its personnel;

(d)    court reporters, their staffs, and professional vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order" (Exhibit A); and

(e)    the author of the document or the original source of the information.

## 8.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Receiving Party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY," the Receiving Party must so notify the Designating Party, in writing (by fax, if possible) immediately and in no event more than three court days after receiving the subpoena or order.  Such notification must include a copy of the subpoena or court order.

The Receiving Party also must immediately inform in writing the Party who

LACA_2456657.1

caused the subpoena or order to issue in the other litigation that some or all the material covered by the subpoena or order is the subject of this Protective Order. In addition, the Receiving Party must deliver a copy of this Stipulated Order promptly to the Party in the other action that caused the subpoena or order to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.  The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

**9.**   **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgement and Agreement to Be Bound" that is attached hereto as Exhibit A.

**10.**   **FILING PROTECTED MATERIAL**

To the extent that a Party deems it necessary to file Protected Materials with the Court, the filing party must file those materials with the Court in a sealed envelope or other appropriate container and mark the envelope or container "documents pending motion to seal."  The filing party must file and serve a notice identifying for the Court and the parties the Protected Materials and indicating the reasons the materials must be filed with the Court, taking care not to describe the materials with such particularity that the notice itself discloses or tends to disclose

LACA_2456657.1

the content of the Protected Materials. Within 14 days of the notice being served, a party may move the Court, pursuant to Civil Local Rule 79-5 and for good cause shown, to have the Protected Materials identified in the notice, or portions thereof, filed under seal. If no motion is timely filed, the materials will be unsealed. Any request for filing materials under seal should be limited to the smallest portion of the document that requires sealing such as through redactions.

## 11.   FINAL DISPOSITION

Unless otherwise ordered or agreed in writing by the Producing Party, within sixty days after the final termination of this action, including any and all appeals, each Receiving Party must return all Protected Material to the Producing Party. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material. With permission in writing from the Designating Party, the Receiving Party may destroy some or all of the Protected Material instead of returning it. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in section 4 (DURATION), above.

## 12.   MISCELLANEOUS

12.1.   Right to Further Relief. Nothing in this Order abridges the right of

17

1    any person to seek its modification by the Court in the future.

2         12.2.  <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this

3    Protective Order no Party waives any right it otherwise would have to object to

4    disclosing or producing any information or item on any ground not addressed in

5    this Stipulated Protective Order.  Similarly, no Party waives any rights to object on

6    any ground to use in evidence of any of the material covered by this Protective

7    Order.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LACA_2456657.1

**EXHIBIT A**

**ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND**

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on [date] in the case of *Water, Inc. v. Everpure, Inc. et al*, Case No. CV09-03389 ABC(SSx). I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name : _____

[printed name]

Signature : _____

[signature]

LACA_2456657.1

1    IT IS SO ORDERED.

2

3

4

5    DATE: 1/26/10                          By: _____

6                                           HON. SUZANNE H. SEGAL
                                            MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LACA_2456657.1